Taft, J.
The first contention of defendant is that the trial court erred in permitting plaintiff to file an amended petition. The request for permission to file this amended petition was made and the permission was granted during the trial and at a time after the statutory period of limitation had expired. Admittedly, the original petition had been filed before expiration of that statutory period of limitation.
The original petition had, to use the words of defendant’s brief, “asserted defendant was negligent with respect to an activity, namely the construction of temporary stands,” whereas by the amended petition plaintiff substituted for such assertion an allegation of “negligent failure to supervise an independent third party * * * when he did the construction job.”
We believe that defendant’s contention, that plaintiff thereby changed her cause of action after the statutory period of limitation had expired, is neces *4 sarily disposed of in favor of plaintiff by Louisville & Nashville Rd. Co. v. Greene, Admx., 113 Ohio St., 546, 149 N. E., 876. The statute authorizing such amendment is the same today as when that case was decided. Section 11363, General Code. See, also, Douglas, Admx., v. Daniels Bros. Coal Co., 135 Ohio St., 641, 22 N. E. (2d), 195, 123 A. L. R., 761; Moherman v. Nickels, 140 Ohio St., 450, 45 N. E. (2d), 405, 143 A. L. R., 1174. Cf. Ferguson v. Industrial Commission, 138 Ohio St., 529, 37 N. E. (2d), 194.
It is not claimed that defendant requested and the record does not disclose that defendant requested any continuance after the plaintiff was authorized to file the amended petition.
In substance, defendant’s further contentions are that the trial court erred
(1) in not holding as a matter of law that plaintiff could not recover from defendant, and
(2) in instructing the jury that, as a matter of law, (a) plaintiff was an invitee of defendant and (b) defendant had full control of the premises at the time of the injuries to the plaintiff.
These other contentions of defendant can not be sustained if the evidence is such as to require the conclusions, as a matter of law, that defendant had not relinquished substantially all occupation and control of the premises upon which plaintiff was injured at the time that she was injured and that defendant had at that time exercised such occupation and control.
The record discloses that all invitations to attend this football game were extended by the Rams who were in the business of conducting National League professional football games, who sold the tickets, for the game and whose team was one of the participants in the game. Admittedly the stands, whose collapse caused injuries to plaintiff, were temporary stands *5 erected by the Rams. Unlike in Witherspoon v. Haft, 157 Ohio St., 474, 106 N. E. (2d), 296, defendant did not erect those stands. Furthermore, there is no direct evidence of any participation by defendant in their erection or of any activity by defendant in supervising their erection or in maintaining them.
The failure of the defendant to take any action, with respect to these temporary stands erected by the Rams or their occupation by invitees of the Rams, could not be actionable negligence unless defendant was under a legal duty to such invitees to take such action. One having neither occupation nor control of premises ordinarily has no such duty with respect to the condition or use of those premises. In order to have the occupation or control of premises necessary to impose such a duty as to particular individuals, one must ordinarily have or exercise the power and the right to admit such individuals to the premises or to exclude them from the premises. See Cooper v. Roose, 151 Ohio St., 316, 85 N. E. (2d), 545.
Under the terms of the so-called lease to the Rams it was provided that the Rams should ‘ ‘ employ at the football games to be conducted * * * the ushers, ticket sellers and ticket takers regularly employed by” the defendant and were “to furnish and pay for police protection required for the orderly conduct and playing of said football games and for the protection of the property of the” defendant. However, the evidence discloses without contradiction that the nurses, police, ushers, ticket takers and ground keepers who worked at this football game were not only employees of defendant but were paid by the defendant. Furthermore, Industrial Commission premium, federal social security and state unemployment compensation insurance charges with respect to these employees were paid by the defendant. Likewise, the withhold *6 ing tax on their wages was deducted and held by defendant for the government. It may be observed that this might be considered consistent with the terms of the so-called lease, which provided that the Rams were to pay defendant for “any special service requested by” the Rams “in connection with the use of said League Park.” Apparently, no more was paid by the Rams to the defendant for such “special services” than “the actual cost” thereof, although the so-called lease provided for payment of “the actual cost plus ten per cent (10%) thereof.”
It may further be observed that, having the defendant’s employees in positions during this particular game where they were actually at least in substantial partial possession and control of the premises, was apparently contemplated by that provision of the so-called lease which read: 1 ‘ The first party [defendant] shall have sole supervision over the conduct and management of said League Park during the playing of football games hereunder and during any practice period when said League Park is being used by second party [the Rams]. ’ ’
Although it appears that the tickets were sold by the Rams, it further appears without dispute that the federal admissions tax and the state sales tax were paid by the defendant. The defendant received from the Rams reimbursement for these payments and other operating expenses, as well as the 15 per cent of the gross sum received from admission fees, which was the rental provided for in the so-called lease. Furthermore, the defendant reserved ‘£ sole and exclusive ownership and control of the * * * concessions.”
There is other evidence in the record tending to indicate that the defendant had not entirely relinquished occupation and control of the premises to the Rams at *7 the time of the game at which the plaintiff was injured, but had instead, at least to a substantial extent, retained and exercised its right to such occupation and control. We believe that the evidence in the record is such that reasonable minds could not come to the conclusion that defendant had substantially relinquished all occupation and control of League Parle to the Rams at the time of this football game or that defendant was not then substantially in occupation and control of the park.
Certainly the police, ushers and ticket takers were individuals who had the power and the right to admit people to the stands on which plaintiff was when injured and to exclude them from those stands. The evidence discloses without contradiction that those police, ushers and ticket takers were not only regular employees of defendant but were employees of defendant at the time of this game and paid by defendant for their services at the game. The only reasonable inference is that, at the time of plaintiff’s injury, defendant retained and was in substantial occupation and control of the portion of the premises on which plaintiff was when injured.
This court has consistently held that, even where a lessor has agreed to make repairs, such agreement and the right to enter upon the premises and make those repairs do not amount to retention of occupation and control of the premises where the lessor has failed or neglected to make repairs. Burdick v. Cheadle, 26 Ohio St., 393; Berkowitz v. Winston, 128 Ohio St., 611, 193 N. E., 343; Cooper v. Roose, supra; Ripple v. Mahoning National Bank, 143 Ohio St., 614, 56 N. E. (2d), 289. Those cases indicate that the unexercised power and right of a lessor to occupation and control of premises may not be inconsistent with such lessor’s complete relinquishment of occupation and control of *8 the premises. See, also, Kauffman v. First Central Trust Co., Trustee, 151 Ohio St., 298, 85 N. E. (2d), 796. However, the instant case does not involve the mere existence of a right and power to occupy and control premises. Instead, it involves a substantial exercise of that right and power.
Where a lessor has not substantially relinquished to his lessee all occupation of and control over a portion of the leased premises and where such lessor has actually exercised his right of occupation of and control over such portion, such lessor is under the duyy to exercise ordinary care with respect to the condition of such portion and that duty extends to invitees of the lessee. Davies, a Minor, v. Kelley, 112 Ohio St., 122, 146 N. E., 888; Rice v. Ziegler, 128 Ohio St., 239, 190 N. E., 560; Stackhouse v. Close, 83 Ohio St., 339, 94 N. E., 746. In such an instance, the duty with respect to the condition of such portion of the premises, owed by the lessor to an invitee of the lessee, is the same duty which any occupier of premises would owe to his own invitees. Stackhouse v. Close, supra. It follows that there was no prejudice to this defendant when the court instructed the jury that, as a matter of law, plaintiff was an invitee of defendant, instead of merely charging that, as a matter of law, plaintiff was an invitee of the Bams but that, since the defendant had not substantially relinquished all occupation and control of the premises and had actually exercised its right to occupy and control them, defendant owed to such invitee of the Bams the duty to exercise ordinary care with respect to the condition of those premises. Likewise-, the charge that defendant, as a matter of law, had full control of the premises could not prejudice this defendant, since, even though this defendant had merely retained and exercised a substantial occupation and control of the premises, the duty *9 of care which this defendant owed to the plaintiff was the same as if defendant had had snch full control.
Since the reasons advanced by defendant do not justify the reversal sought, the judgment is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Matthias and Hart, JJ., concur.
Stewart, J., concurs in the syllabus and in the judgment.
Middleton, J., concurs in paragraphs two, three, four and five of the syllabus and in the judgment.