SIDLE ET AL., APPELLEES, *v.* HUMPHREY, APPELLANT.

[Cite as Sidle v. Humphrey, 8 Ohio App. 2d 25.]

(No. 8155—Decided October 4, 1966.)

*Mr. Robert D. Holmes, Mr. George E. Tyack* and *Mr. Thomas M. Tyack,* for appellees.

*Messrs. Wiles, Doucher, Tressler, Martin & Ford,* and *Mr. Paul W. Martin,* for appellant.

BRYANT, P. J. This is an appeal on questions of law from the verdict of the jury and judgment rendered in the Common Pleas Court of Franklin County. Herbert W. and Vivian Jean Sidle, appellees herein, plaintiffs below, brought suit as par-

ents of Mark E. Sidle, a minor, who at the time of filing the petition was fourteen years of age. Joe D. Humphrey, appellant herein, defendant below, was sued as owner of a multiple family dwelling located in Columbus, Ohio, for damages in the amount of $16,479.15 as a result of a fall sustained by Mark E. Sidle on December 14, 1960, while leaving the multiple family dwelling owned by Humphrey.

The petition alleged that the fall was due to ice and snow on the front steps of the premises, which allegedly were negligently left there by the defendant. The petition, omitting the heading, caption and verification, reads as follows:

"The plaintiffs are the parents of Mark E. Sidle, a minor now fourteen years of age.

"Defendant is the owner of a multiple family dwelling at the northeast corner of Neil Avenue and Worthington Street in the city of Columbus and was the owner of said premises and in control of the front steps thereto on December 14, 1960.

"On December 14, 1960, Mark E. Sidle was engaged in delivering newspapers to the tenants of the defendant when he was caused to fall on the front steps of said premises due to water and snow which the defendant had permitted to remain and form ice on said front steps. At the time of said fall Mark Everett Sidle, said minor, had the express or implied permission of defendant to enter on the premises and defendant knew or had reason to know that a person such as plaintiff would sustain a fall and injury due to the condition in which the said steps and porch were permitted to remain.

"As a result of said fall Mark E. Sidle was injured and plaintiffs have, as his parents, incurred medical expense and hospital expenses to date in the amount of approximately $1,-679.15 and will incur further such expenses until he is 21 years of age in the amount of about $1,000, including special shoes. As a result of said injury Mark E. Sidle was disabled from work and will be disabled in the future, particularly while he is under 21 years of age, by reason of which his earnings from the time of injury until he is 21 years of age, in the amount of $13,800 have been lost.

"Wherefore plaintiffs pray judgment against defendant for $16,479.15."

Immediately following that is the answer filed on behalf

of Humphrey admitting the ownership of the property at 222 King Avenue, Columbus, Ohio, admitting plaintiffs are the parents of Mark E. Sidle and setting forth a general denial as to other allegations in the petition. Further the answer alleges that Mark Sidle was guilty of negligence which contributed to the accident and the resulting injuries. The reply consisted of a general denial of allegations contained in the answer.

The case was tried to the court and a jury and resulted in a jury verdict signed by nine of the twelve jurors awarding plaintiffs damages in the sum of $5,000. At the conclusion of plaintiffs' case, counsel for Humphrey made a motion for a directed verdict in favor of the defendant, which was overruled, after which the defendant rested without presenting any evidence and renewed his motion for a directed verdict in favor of the defendant at the close of the case, which motion was also overruled.

Before argument of the case, five special charges requested by the defendant were given by the court and two others requested by the defendant were refused. In his appeal to this court, Humphrey has assigned six errors reading as follows:

"1. The court erred in overruling the motion of the defendant-appellant for a directed verdict at the close of the case of plaintiffs-appellees, and also at the close of all of the evidence in the case.

"2. The court erred in refusing to give special instructions before argument as requested by defendant-appellant.

"3. The court erred in its general charge to the jury.

"4. The verdict and judgment of the court is contrary to law and is against the manifest weight of the evidence.

"5. The court erred in overruling the motion of the defendant-appellant for a judgment notwithstanding the verdict, and in overruling the motion of the defendant-appellant for a new trial.

"6. Other errors apparent upon the face of the record."

In the brief of both the appellant and appellees the arguments are divided into two parts, the first relating to the general questions of law, and the second relating to whether Mark E. Sidle was guilty of contributory negligence.

It appears that the principal disagreement in this case does not arise from the facts alleged and proven but instead

arises from the interpretation thereof and the legal rules which should apply.

As we understand the evidence, Humphrey purchased a multiple family dwelling located at the northeast corner of King Avenue and Worthington Street in Columbus, Ohio, in 1956, referred to as 222 King Avenue. This property contained nine apartments or living units and all of them were rented on December 14, 1960, when the accident complained of took place.

The structure faced on King Avenue, and eight of the nine apartments used the King Avenue entrance. Starting with the public sidewalk and proceeding north to the building there were a cement walk, four or five cement steps, a further cement walk and wooden steps, either four or five, leading to the porch at the front. At the time of the accident there were handrails at both the east and west ends of the wooden steps. (Exhibits 1 & 2.)

Exhibit 24 was a certificate from the United States of America, Department of Commerce, Weather Bureau, dealing with sunshine, temperature, snowfall and snow on the ground for the five-day period from December 10, 1960, to and including December 14, 1960. It reads in part as follows:

| | "Percent Possible Sunshine | Temperature °F | | Snowfall | Snow on Ground 8 AM |
|---|---|---|---|---|---|
| | | Highest | Lowest | (Inches) | |
| Dec. 10 | 15 | 34 | 15 | 0 | 0 |
| 11 | 0 | 30 | 22 | 4.0 | 4″ |
| 12 | 21 | 22 | 2 | Trace | 4″ |
| 13 | 66 | 12 | -3 | 0 | 3″ |
| 14 | 72 | 32 | 12 | 0 | 2″'″ |

From this exhibit it will be seen that no snow fell on December 14, 1960, the day of the accident, nor on the day prior thereto, and that only a trace of snow fell on December 12, 1960. It also appears that no snow fell on December 10, 1960, but that four inches fell on December 11, 1960.

It appears at the outset that the petition contains no alle-

gation as to either a specific or general defect in the building structure or appurtenances thereto, and it therefore is not necessary to refer to decisions which are concerned solely or principally with the liability of either an owner or landlord in such cases.

Humphrey testified that he did not recall icicles hanging down from the gutters over the steps. Mark E. Sidle testified as to the presence of icicles all along the front of the porch. Mrs. Sidle testified as to "ice, and ice sort of drippings, from the hand rail." Herbert W. Sidle testified as to a considerable amount of "icicles hanging down from the edge of the porch."

It is undisputed in the record that Mark E. Sidle had been carrying a daily newspaper route for nearly a year; that he served 80 subscribers; that he was born on February 16, 1948; attended a Junior High School; and at the age of slightly under thirteen years he was five feet, two inches or four inches tall, and weighed 172 pounds.

It is further not in dispute that Mark Sidle delivered the daily newspaper to five or six tenants in the building owned by Humphrey, and that Humphrey was aware that some of the tenants received a daily newspaper delivered to the apartments.

As to the events at the time of the fall, Mark Sidle was the only witness. He hauled his newspapers in a wagon which he left on the public sidewalk out in front of the building. He took five or six papers from the wagon and entered the building delivering all of them to subscribers living therein. He left the building with nothing in his hands, started to descend the wooden steps at the front edge of the porch, reached for the wooden railing and fell, landing at the bottom of the steps.

Mark Sidle had arrived at the location between 4:30 p. m. and 5 p. m.; had noticed that the wooden porch steps were ice-covered, the ice being thick and bumpy on the right or east side, with not so much ice and some clear places where the wood showed on the left or west side of the steps; and that he had used the west side of the steps both times.

Mark Sidle suffered severe injuries in the fall, was taken to the hospital in an ambulance, and as a result of that and other falls he was incapacitated for a long period of time, having been returned to the hospital repeatedly.

The first part of the brief of appellants deals with the liability of landlords generally "with respect to the natural accumulation of ice and snow on their property." Several cases are cited to establish the freedom from liability of municipalities with respect to ice and snow on streets and sidewalks, not in issue here. Other cases cited deal with the liability of restaurant proprietors and store owners as to adjoining parking lots and liability of the owner of a trailer park to a tenant, all denying liability and all or nearly all based on normal accumulation of ice and snow and absence of defects from structures.

It would appear, however, that the rule in Ohio is different in the case of a landlord in a multi-family dwelling where by contract, specific agreement or usage, the landlord has retained possession and control of the part or parts of the building and premises used in common by the several tenants and has agreed to or taken over the job of keeping the stairways, walks, approaches or steps free from ice and snow.

In the case of *Oswald* v. *Jeraj* (1946), 146 Ohio St. 676, the owner of a building containing six apartments was held liable in damages to a tenant who fell upon ice covered with snow, notwithstanding the fact that the tenant had several times traveled in and out of the building over the snow-covered area.

In course of the opinion in the *Oswald case* it was pointed out that the decisions in the several states were not in agreement on the question whether the owner of an apartment building owes a duty to the tenants "to remove from the common approaches thereto ice and snow caused by natural elements." At page 680 in the same case, Bell, J., wrote as follows:

"It is urged by the plaintiff that we are called upon here to accept or reject the so-called Massachusetts rule. We do not think that the facts presented call for the declaration of any new principle of law. As we view the situation the principle announced in the case of *Davies, a Minor,* v. *Kelley,* 112 Ohio St. 122, 146 N. E. 888, is dispositive of this case.

"Paragraph one of the syllabus reads as follows:

" 'If the owner of a house leases a portion of it, to which access is had by way of hall, stairways *or other approaches,* to be used by such tenant in common with the owner or tenants of the other portions of the premises and retains the possession and control of such halls, stairways *or other approaches,* it is his

duty to exercise ordinary care to keep the same in a reasonably safe condition.' (Emphasis added.) See, also, *Rice* v. *Ziegler*, 128 Ohio St. 239, 190 N. E. 560.

"That case is in harmony with the general rule and supported by the weight of authority."

The holding by the Supreme Court of Ohio in the *Oswald case* has been in keeping with the decisions of most of the courts not bound by earlier decisions. See annotation "Landlord's liability for injury or death due to ice or snow in areas or passageways used in common by tenants," 26 A. L. R. 2d 610. At page 615 in the annotation, it is stated that "the landlord will not ordinarily be liable to one injured as a result of the presence of ice and snow on the common way." Cited in support is *Turoff* v. *Richman* (1944), 76 Ohio App. 83. This is followed by the reference to the *Oswald case* decided in 1946. The annotation says:

"Most of the courts not bound by earlier decisions, which have, in recent years, passed upon the question, have held that the landlord's general duty to exercise reasonable care to keep the parts of the premises retained in the landlord's control for the common use of his tenants in reasonably safe condition for the contemplated use may, in a proper situation, include the duty of removing natural accumulations of ice and snow from the common ways or structures."

In support of this view, see 32 American Jurisprudence 575, Landlord and Tenant, Section 600. For a different view, see 52 Corpus Juris Secundum 46, Landlord and Tenant, Section 417d, and 33 Ohio Jurisprudence 2d 498, Section 230, and cases cited therein.

A review of the basis of liability of the landlord may be found in the case of *Bowman* v. *Goldsmith Bros. Co.* (1952), 63 Ohio Law Abs. 428, in which Doyle, J., in course of the opinion wrote as follows:

"Proceeding to situations where the landlord retains control, there may be found the well-recognized rule that, where premises are let to several tenants who occupy different parts thereof, but who enjoy and use certain parts in common—such as walks, driveways, porches, entrances, halls and stairways—as a means of access to their respective tenancies, these approaches and passageways are generally presumed to be in the

possession and control of the landlord, in the event that specific evidence shows nothing to the contrary. Under such circumstances, the landlord in effect invites the use of such passageways, etc., by the tenants, and such other persons whose relation to the tenants involves their use to obtain access to the demised rooms or apartments, and the landlord may be held liable for personal injury to a tenant proximately resulting from his failure to exercise ordinary care in keeping such parts of the property in proper repair and in a reasonably safe condition. Under circumstances of this nature, there arises a legal duty on the part of the landlord which would supply the necessary predicate for an action in tort growing out of the omission to perform an express or implied contract to keep the premises reasonably safe by the removal of ice and snow.''

From what has been set forth above, and particularly the holding of the Supreme Court of Ohio in the *Oswald case,* it would appear that in Ohio under the circumstances the liability of the landlord was sufficiently shown.

It would further appear that whether the newsboy was an invitee or a licensee, he had rights against the landlord for damages similar to those of the tenant. For cases involving the rights of newspaper boys, see *Beacon Journal Publishing Co.* v. *Pavick* (1935), 18 Ohio Law Abs. 547, and *Mann* v. *Times-Press Co.* (1936), 23 Ohio Law Abs. 199.

In 52 Corpus Juris Secundum 97, Landlord and Tenant, Section 424a, there appears the following:

"Invitees and licensees of the tenant have such rights against the landlord for damages for injury to their property as the tenant has; and, as a general rule, a landlord is not liable for injury except such as results from his negligence with respect to parts of the demised property over which he has retained control."

Therefore, we conclude that the first, second, third and fifth assignments of error are not well taken and must be overruled. The second part of the brief of appellant relates to the negligence of Mark Sidle and the risk he assumed in using the icy steps. These questions were proper for submission to the jury and we are unable to state as a matter of law that the jury lacked evidence to support the decision it made. That is not to say that we necessarily would make the same determination, as the matter is not in our hands on the same basis.

There remains the fourth assignment of error that the judgment is contrary to law and against the manifest weight of the evidence. We do not think this assignment of error is well taken nor the sixth assignment as to other unspecified errors and they are accordingly overruled.

The judgment of the court below will be affirmed and the cause remanded.

*Judgment affirmed and cause remanded.*

DUFFY and TROOP, JJ., concur.

DUFFY, J., concurring. I concur in the judgment. Since the parents were suing for themselves and not on behalf of their son, I do not find that under Ohio law the negligence of the child is imputed to the parents. His assumption of risk would not be a factor for the jury to consider, and his contributory negligence would not necessarily defeat recovery by his parents from a third person. See *Videtto* v. *Marsh*, 112 Ohio App. 151; 39 Ohio Jurisprudence 2d 676; and 41 Ohio Jurisprudence 2d 364. See, also, 66 A. L. R. 2d 1320.